**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NEAL HEIMBACH AND KAREN SALASKY, on behalf of themselves and others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> AMAZON.COM, INC. AMAZON.COM DEDC, LLC, AMAZON.COM DEDC, INC. and INTEGRITY STAFFING SOLUTIONS, INC. <br><br> Defendants. | CIVIL ACTION NO. |

**NOTICE OF REMOVAL FROM STATE COURT**

Defendants Amazon.com, Inc., Amazon.com DEDC, LLC, and Amazon.com DEDC, Inc.[1] (collectively, "the Amazon Defendants"), by their undersigned attorneys, hereby give notice that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, this action is removed from the Philadelphia County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania.  As grounds for removal, the Amazon Defendants state as follows:

**I.     THE STATE COURT ACTION**

1.     On or about September 27, 2013, Plaintiff Neal Heimbach ("Heimbach") commenced a putative class action by Complaint against the Amazon Defendants and Integrity Staffing Solutions, Inc. ("Integrity" and collectively with the Amazon Defendants, "Defendants") entitled Heimbach v. Amazon.com, Inc. et al., Case No. 003526, in the

---

[1]     Although named as a defendant, Amazon.com DEDC, Inc. does not currently exist.

Philadelphia County Court of Common Pleas (the "Complaint").  A true and correct copy of the Complaint is attached as Exhibit A.

2.      On or about October 4, 2013, counsel for the Amazon Defendants and counsel for Integrity both accepted service of the Complaint.

3.      On or about October 10, 2013, Heimbach and Defendants agreed upon and entered into a Stipulation whereby Defendants were permitted to move, answer, or otherwise respond to the Complaint on or before November 8, 2013.  A true and correct copy of the Stipulation is attached as Exhibit B.

4.      On or about October 21, 2013, a Class Action Initiation Order was entered in the Philadelphia County Court of Common Pleas.  A true and correct copy of the Class Action Initiation Order is attached as Exhibit C.

5.      On or about October 30, 2013, the First Amended Complaint was filed in the Philadelphia County Court of Common Pleas (the "Amended Complaint").  A true and correct copy of the Amended Complaint is attached as Exhibit D.  The Amended Complaint added Karen Salasky ("Salasky") as a named plaintiff.  As alleged, Salasky was an employee of Integrity.  Id. at ¶ 16.  This was the first allegation in any pleading that named any former Integrity employee as a plaintiff in this case.  In that regard, the Amended Complaint confirms that the original named Plaintiff (Heimbach) was employed by the Amazon Defendants, not Integrity.  Id. at ¶ 14.

6.      On or about October 30, 2013, Plaintiffs and Defendants agreed upon and entered into a Stipulation whereby Defendants were permitted to move, answer, or otherwise respond to the Complaint on or before December 6, 2013.  A true and correct copy of the October 30, 2013 Stipulation is attached as Exhibit E.

7.      No other proceedings have been held in this action, and the Summons, Complaint, Class Action Initiation Order, October 10, 2013 Stipulation, and October 30 2013 Stipulation constitute all processes and pleadings in this action.

8.      Plaintiffs allege that Defendants jointly operate a 600,000 square foot logistics facility located in Breinigsville, Pennsylvania (the "Facility") and that Defendants did not properly compensate them while they worked at the Facility.   See Exhibit D (Amended Complaint), ¶¶ 12-16, 49.  More specifically, Plaintiffs allege that Defendants failed to comply with the requirements of the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Cons. Stat. §§ 333.102 et seq.  Id. at ¶ 49.  Plaintiffs assert claims on behalf of a putative class of other individuals who have worked for Defendants at the Facility since September 27, 2010.[2]  Id.

## II.      REMOVAL IS TIMELY

9.      This Notice of Removal is timely filed, pursuant to 28 U.S.C. § 1446(b), as it is being filed within thirty (30) days after October 4, 2013, the date upon which the Amazon Defendants accepted service of Plaintiffs' Complaint.

10.      No previous Notice of Removal has been filed with this Court for the relief sought herein.

## III.      GROUNDS FOR REMOVAL

11.      28 U.S.C. § 1441 establishes when an action is removable.  28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

---

[2]      Defendants do not concede, and reserve the right to contest, Plaintiff's allegation that this lawsuit properly can proceed as a class action.

12.     This Court's subject matter jurisdiction, and the basis for removal, is founded upon 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

## IV.     ORIGINAL SUBJECT MATTER JURISDICTION

13.     The Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part in 28 U.S.C. § 1332(d)(2).

14.     CAFA provides for federal subject matter jurisdiction over any class action in which (1) the matter in controversy exceeds a specified jurisdictional minimum of $5 million, (2) the aggregate number of putative class members in all proposed plaintiff classes is at least 100, and (3) any member of a class of plaintiffs is a citizen of a different state from any defendant.  28 U.S.C. § 1332(d)(2), 1332(d)(5).

15.     Although Defendants deny Plaintiffs' factual allegations and that they or the class they purport to represent is entitled to the relief requested, based on Plaintiffs' allegations in the Amended Complaint and prayer for relief, all requirements for jurisdiction under CAFA have been met in this case.  Accordingly, diversity of citizenship exists under CAFA, and this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

### A.     The Amount Plaintiff Places in Controversy Exceeds $5 Million

16.     Although Plaintiffs' Amended Complaint is silent on the specific amount of damages, Plaintiffs' bare allegations are enough to show that the amount in controversy exceeds the jurisdictional minimum.[3]

17.     When a complaint does not aver "that the amount in controversy is less than the jurisdictional minimum" required under CAFA, as is the case here, the case will only be

---

[3]     Defendants dispute, and reserve the right to contest, that any amount is owed to either Plaintiffs or the putative class members that they seek to represent.  Yet, the amount in controversy requirement is satisfied for purposes of removal by Plaintiffs' allegations in the Amended Complaint.

remanded "if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount." See Frederico v. Home Depot, Inc., 507 F.3d 188, 197 (3rd Cir. 2007). Congress has stated that "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." See S. REP. 109-14, at 42 (2005) (citation omitted).

18. For cases being removed pursuant to CAFA, "determining the amount in controversy begins with a reading of the complaint filed in the state court." Frederico, 507 F.3d at 197 (quoting Samuel–Bassett v. KIA Motors America, Inc., 357 F.3d 392, 398 (3d Cir. 2004)). In this matter, Plaintiffs purport to represent a class consisting of all "Warehouse Workers" that have worked at the Facility since September 27, 2010. See Exhibit D (Amended Complaint), ¶¶ 35-36.

19. Plaintiffs allege that Defendants violated the PMWA by not compensating all Warehouse Workers during the end-of-shift screening process that "routinely took up to between 10 and 20 minutes for Plaintiffs and other Warehouse Workers to complete, and, with delays, . . . could take over 20 minutes." See Exhibit D (Amended Complaint), ¶ 26. Plaintiffs allege further that the Defendants violated the PMWA by not compensating all Warehouse Workers for the screening process during meal breaks that "usually takes 7 to 10 minutes for Plaintiffs to complete, and, with delays . . . can last longer." Id. at ¶ 33.

20. Taken together, Plaintiffs explicitly claim that each member of the putative class is entitled to compensation for 17 to 30-plus minutes, and possibly more, of uncompensated time for every day a putative class member has worked at the Facility since September 27, 2010. This is the equivalent of at least 68 to 120 minutes per week, with the median being at least 94

minutes per week, because the putative class members almost uniformly have worked no less than four days per week and often more.

21.     Plaintiffs allege further that Defendants "automatically deducted 30 minutes from Plaintiffs' and other Warehouse Workers' compensable time each shift for a purported lunch break," "required Plaintiffs and other Warehouse Workers to remain at their work locations within the Facility until the start of the unpaid meal period," and required putative class members to "take several minutes" walking to time clocks and clocking out at lunch.  See Exhibit D (Amended Complaint), ¶¶ 28-30.

22.     Taken together, these allegations of the Amended Complaint appear to claim that the putative class has been deprived of more than 10 minutes out of their 30 minute lunch break (i.e. several minutes of walking and then 7-10 minutes or more of screening), which reduces the unpaid lunch break (according to Plaintiffs' allegations) to less than 30 minutes.  In so doing, it is reasonable to assume that Plaintiffs are seeking compensation for the entirety of their lunch breaks.  See 29 CFR 785.19 (defining non-compensable "bona fide meal period" as usually any amount of time 30-minutes or more); 29 CFR 785.18 (stating that 5 to 20 minutes of "rest" is compensable); see, e.g., Atkinson v. House of Raeford Farms, Inc., 6:09-CV-01901-JMC, 2012 WL 2871747 (D.S.C. July 12, 2012) (finding that a lunch break under 20 minutes is actually a compensable break).  Defendants dispute that the Plaintiffs could recover this relief under Pennsylvania law or that the factual record will support their allegations, but under Plaintiffs' theory the putative class members would be entitled to a total amount of at least 160 to 200 minutes per week in alleged uncompensated time, with the median being at least 180 minutes.

23.     Plaintiffs seek to recover not only purported damages accrued at the time of filing, but also damages that continue to accrue during the course of this lawsuit.  See Exhibit D

(Amended Complaint), ¶ 35-36 (stating that the action is brought on behalf of Plaintiffs and "*all* individuals employed by Amazon who, during any workweek *since* September 27, 2010, were subjected to a security screening process . . . ." (emphasis added)).

24.     Accordingly, the amount of continuing liability for any current hourly employee within the putative class should be considered in calculating the amount in controversy.  See Broglie v. MacKay-Smith, 541 F.2d 453, 455 (4th Cir. 1976) ("[D]amages which the plaintiff claims will accrue in the future are properly counted against the jurisdictional amount if a right to future payments . . . will be adjudged in the present suit.").   This concept is common in employment disputes involving back-pay, front-pay, or lost wages, with courts routinely including liability that continues throughout litigation in the amount in controversy.  See, e.g., Chabal v. Reagan, 822 F.2d 349 (3d Cir. 1987) (holding that "the amount in controversy cannot be considered only the amount of back pay accrued at the time of filing," but should also should consider whether "recovery would exceed [the minimum] through the continuing accrual of back pay during the course of litigation").[4]

---

[4]     See also, e.g., Shaw v. Gwatney, 795 F.2d 1351, 1355-56 (8th Cir. 1986) (the amount of a claim for back pay "is not the amount . . . accrued at the time of filing but the total amount of back pay the plaintiff stands ultimately to recover in the suit"); Goble v. Marsh, 684 F.2d 12, 15 (D.C. Cir. 1982) ("By its very nature, a back pay claim continues to accrue between filing of the complaint and entry of final judgment."); Andrews v. E.I. Du Pont de Nemours & Co., 447 F.3d 510, 515 (7th Cir. 2006) (considering future lost wages as factor in satisfying jurisdictional minimum); White v. Loomis Armored US, Inc., 729 F. Supp. 2d 897, 902 (E.D. Mich. 2010) ("With respect to the lost wages, courts have used the wages the plaintiff stands to recover by the time the case concludes in calculating the amount in controversy."); Reinhardt v. Mont. Human Rights Bureau, 2010 WL 5391280, at *3 (D. Mont. Dec. 17, 2010) (including alleged back- and front-pay in jurisdictional analysis, both of which were still accruing during litigation); DeWolff v. Hexacomb Corp., 2009 WL 2370723, at *3 (W.D. Mich. July 30, 2009) (concluding that if plaintiff prevails, he could recover back-pay "for the period from the filing of the complaint until entry of judgment in this case"); Logsdon v. Duron, Inc., 2005 WL 1163095, at *4-5 (M.D. Fla. May 17, 2005) (using back- and front-pay accruing up to and until the time of trial in finding that plaintiff's complaint satisfied the amount-in-

25.     The ruling in <u>Mazzucco v. Kraft Foods Global, Inc.</u>, No. 11–2430, 2011 WL 6935320 (D.N.J. Nov. 23, 2011), is instructive.  In <u>Mazzucco</u>, the plaintiff in a wage and hour dispute defined the putative class—just as Plaintiffs have here—to include current and former employees.  <u>Id.</u> at *7.  Noting that alleged violations continued throughout the lawsuit, the Court held:

> An accurate reflection of damages would include the unpaid wages during the course of the litigation.  The right to collect damages accruing subsequent to the filing of the complaint will be adjudicated in this matter.  Therefore, it is proper for this Court to include those damages in its amount in controversy analysis.

<u>Id.</u> at *8 (internal citations omitted); accord <u>Falatous v. Johnson & Johnson</u>, No. 07-1572, 2007 WL 3256833, at *9-10 (D.N.J. Nov. 5, 2007) (finding the application of this approach to a wage and hour class action consistent with "the norm in employment cases in which backpay and frontpay are routinely awarded").  The same reasoning applies to Plaintiffs' claims here.[5]

26.     To determine the appropriate time period for assessing the amount in controversy where damages continue to accrue after a complaint is filed, courts have relied upon the median interval between the time of filing a civil case in the district through disposition after trial, as reported annually by the Administrative Office of the United States Courts.  <u>See Mazzucco</u>, 2011 WL 6935320, at *8; <u>Falatous</u>, 2007 WL 3256833, at *10; <u>DeWolff</u>, 2009 WL 2370723, at *3.

---

controversy requirement); <u>Savage v. Envirotest Sys. Corp.</u>, 1996 WL 732551, at *3 (D. Conn. Dec. 13, 1996) (observing that "[i]t is reasonable to assume that this action, allowing for discovery and dispositive motions, will not be tried for another year . . . [t]hus, if [plaintiff] ultimately prevails, her accrued backpay and employment benefits alone will likely exceed [the jurisdictional minimum]").

[5]     Taking into account any damages accruing after a lawsuit is filed is entirely consistent with the general rule that jurisdiction must be determined based upon the circumstances prevailing at the time of removal.  Whether such damages are "in controversy" is still determined by analyzing a plaintiff's complaint at that time, even though those damages may accrue after the lawsuit is filed.  <u>See, e.g.</u>, <u>Mazzucco</u>, 2011 WL 6935320, at *3 (as applied to future damages, "limiting the amount in controversy analysis to the date upon which the removal was filed is too restrictive [and] an appropriate amount in controversy analysis considers the pleadings as well as damages accruing in the future").

Other courts have simply estimated the time it would take until the case would be tried.  See, e.g., Savage, 1996 WL 732551, at *3.

27.     The median time interval from the filing of a civil case in the Eastern District of Pennsylvania through trial is 19.3 months.  See Federal Judicial Caseload Statistics, Table C-5, "U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2012," available online at http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/ FederalJudicialCaseloadStatistics/2012/tables/C05Mar12.pdf (last visited October 30, 2013). This was several months shorter than both the national median (23.4 months) and the median for all districts within the Third Circuit (23.7 months).  Id.  Undoubtedly, moreover, this period is shorter than reasonably can be anticipated for a class action such as this matter.

28.     In any event, using just the median interval for civil cases in the Eastern District of Pennsylvania, a potential trial in this matter will not be completed until May 7, 2015—19 months and 10 days from the date this action was initiated.  Accordingly, the putative class members' claimed damages encompass at least the dates between September 27, 2010 and May 7, 2015.

29.     Plaintiffs state in the Amended Complaint that putative class members are entitled to the following relief:

> during weeks in which Plaintiffs' and the class members' combined paid and unpaid compensable time exceeds 40 hours, Plaintiffs and the class members are entitled to (i) compensation at their regular pay rate for uncompensated hours worked under 40 hours and (ii) compensation at their overtime premium pay rate for uncompensated hours worked over 40 hours.  Plaintiffs do not seek damages for those workweeks in which the combined paid and unpaid compensable time does not exceed 40 hours.

See Exhibit D (Amended Complaint), ¶ 49.

30. To determine damages and potential members of the putative class, the Amazon Defendants based their assumptions on the following:[6]

a) If the sum of the employee's weekly regular worked hours plus the unpaid time did not exceed 40 hours, the employee was awarded zero damages.

b) If the sum of the employee's weekly regular worked hours plus the unpaid time did exceed 40 hours, the unpaid time up to 40 hours was paid at the employee's straight time rate and the unpaid time over 40 hours was paid at the employee's overtime rate.

c) The employee's straight time rate is equal to the employee's hourly rate plus any shift differential.

d) The employee's overtime pay rate is the straight time rate plus any shift differential multiplied by one-and-one-half.

e) If an employee was not employed or was on leave for a portion of a week then that week is excluded from the damage estimate and class of putative class members.

Exhibit F, ¶ 8 (Declaration of Amy J. Purdie).

---

[6] The Amazon Defendants utilize bi-weekly payroll data, as employees are paid on every other Friday for work conducted in the prior two weeks from Sunday through Saturday. Exhibit F, ¶ 5 (Declaration of Amy J. Purdie). The Amazon Defendants' payroll data contained the total number of regular hours and overtime hours the employee earned in each two-week pay period but did not show how the hours were distributed across the two weeks. Id. at ¶ 6. Accordingly, the following assumptions were made in calculating damages:

a) If the employee had 80 regular hours over a two-week period, that employee worked 40 regular hours in each week.

b) If the employee had less than 80 regular hours and more than zero overtime hours over a two-week period, that employee worked 40 hours in one week of the pay period and the remainder of the regular hours in the other week.

c) If the employee had less than 80 regular hours and no overtime hours over a two-week period, that employee worked half of the regular hours in the first week and half of the regular hours in the second week.

Id. at ¶ 7.

31.     The assumptions were based on data provided by the Amazon Defendants reflecting hire dates, leave of absence dates, and termination dates for the putative class members.  See Exhibit F, ¶ 3 (Declaration of Amy J. Purdie).

32.     Using Plaintiffs' definition of Warehouse Workers, the theory of relief noted in the Amended Complaint, and the above-noted data and assumptions, the Amazon Defendants have determined that there are currently at least 3,730 members in Plaintiffs' putative class – all hourly employees of the Amazon Defendants who would have passed through security screening.  See Exhibit D (Amended Complaint), ¶¶ 17, 35-36, 49; see also Exhibit F, ¶ 9 (Declaration of Amy J. Purdie).

33.     Based on the noted number of putative class members, their work weeks during the claimed liability period described above, and the median uncompensated wages alleged in the Amended Complaint (without counting the apparent claim to recover for each unpaid lunch period), 94 minutes per week, the putative class seeks $5,036,431 in damages solely against the Amazon Defendants.[7]  See Exhibit F, ¶ 10 (Declaration of Amy J. Purdie).  This amount alone exceeds the jurisdictional threshold of $5 million under CAFA.[8]

34.     Based on the noted number of putative class members, their work weeks during the claimed liability period, and the highest enumerated uncompensated wages in the Amended Complaint (without counting the apparent claim to recover for each unpaid lunch period), 120

---

[7]     This amount includes $3,015,287 in damages calculated between September 27, 2010 and the date of the Amazon Defendants' last payroll, October 5, 2013, and the additional damages through anticipated trial from October 6, 2013 to May 7, 2015, in an amount equaling $2,021,144.  See Exhibit F, ¶ 10 (Declaration of Amy J. Purdie).

[8]     Defendants deny the validity of Plaintiffs' allegations, and/or that Plaintiffs would be entitled to any of the relief they seek.  However, for purposes of jurisdiction under CAFA, Defendants accept Plaintiffs' allegations solely for the purpose of establishing that Plaintiffs, through these allegations, seek damages in excess of the jurisdictional requirement.

minutes per week, Plaintiffs seek $6,567,519 in damages solely against the Amazon Defendants.[9]
See Exhibit F, ¶ 11 (Declaration of Amy J. Purdie).  This exceeds the jurisdictional threshold of
$5 million under CAFA by an even greater amount.

35.     Plaintiffs, however, also seek attorneys' fees.   See Exhibit D (Amended
Complaint), Prayer for Relief, ¶ C.  In determining the amount in controversy for purposes of
removal, attorneys' fees in the amount of 30% may be aggregated with the claimed damages.
Frederico, 507 F.3d at 199 (considering attorneys' fees of 30% when calculating amount in
controversy); Lorah v. SunTrust Mortgage, Inc., CIV.A. 08-703, 2009 WL 413113 (E.D. Pa.
Feb. 18, 2009); Hoffman v. Nutraceutical Corp., CIV. 12-5803-ES-SCM, 2013 WL 885169, *4
(D.N.J. Jan. 24, 2013); Andrews v. Home Depot U.S.A., Inc., No. 03-5200, 2010 WL 5464303,
at *3 (D. N.J. Dec. 29, 2010).

36.     Based on the noted number of putative class members, their work weeks during
the claimed liability period, and the median uncompensated wages alleged in the Amended
Complaint (without counting the apparent claim to recover for each unpaid lunch period), 94
minutes per week, Plaintiffs seek $1,510,929 in attorneys' fees solely against the Amazon
Defendants.  When combined with underlying claimed damages, this results in claimed damages
of $6,547,360.

37.     Based on the noted number of putative class members, their work weeks during
the claimed liability period, and the highest enumerated uncompensated wages alleged in the
Amended Complaint, 120 minutes per week (without counting the apparent claim to recover for
each unpaid lunch period), Plaintiffs seek $1,970,255 in attorneys' fees solely against the

---

[9]     This amount includes $3,929,862 in damages calculated between September 27, 2010 and
the date of the Amazon Defendants' last payroll, October 5, 2013, and the additional
damages through anticipated trial from October 6, 2013 to May 7, 2015, in an amount
equaling $2,637,657.  See Exhibit F, ¶ 11 (Declaration of Amy J. Purdie).

Amazon Defendants.  When combined with underlying claimed damages, this results in claimed damages of $8,537,774.

38.     If Plaintiffs seek to recover additional wages for the entirety of each 30-minute lunch break, which appears to be their theory as described above, damages claimed solely against the Amazon Defendants would increase to $10,514,052 based on their median claimed end of day wait times (15 minutes) and $11,860,748 based on their higher claimed end of day wait times (20 minutes).  See Exhibit F, ¶¶ 12-13 (Declaration of Amy J. Purdie).  These totals do not include attorneys' fees of 30%, which would result in increased claimed damages of $13,668,267 and $15,418,972, respectively.

39.     The Amazon Defendants also offer no estimate of damages against Integrity.  In light of Plaintiffs' claims against Integrity in the Amended Complaint, Plaintiffs seek additional damages well beyond the amounts noted against the Amazon Defendants and in an amount that would exceed removal requirements under CAFA by an even greater amount.

**B.     There Are Over 100 Putative Class Members**

40.     Plaintiffs purport to assert claims on behalf of a putative class of all warehouse workers that have worked at the Facility since September 27, 2010 and have combined paid and unpaid time during a given week exceeding 40 hours.  See Exhibit D (Amended Complaint), ¶¶ 12, 35-36, 49.  Based on this definition, the putative class currently includes at least 3,730 putative class members who were employed by the Amazon Defendants.

41.     Plaintiffs further allege that "Amazon and ISS have separately employed hundreds of Warehouse Workers at the Facility since September 27, 2010."  See Exhibit D (Amended Complaint), ¶ 18.  Thus, even by Plaintiffs' account the requirement for a class of at least 100 individuals is satisfied.

C.    **Diversity Exists Between the Parties**

42.    For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled, and residence alone is enough to establish a presumption of domicile.  See Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) (citizenship and domicile are equivalent for diversity purposes); Capato v. Astrue, No. 08-5405, 2010 WL 1076522 at *6 (D.N.J. March 23, 2010) (residency establishes a presumption of domicile) (citing District of Columbia v. Murphy, 314 U.S. 441, 455 (1941)).

43.    Plaintiffs admit to "residing" in Pennsylvania and should be considered citizens of that Commonwealth.  See Exhibit D (Amended Complaint) at ¶¶ 1-2

44.    Upon information and belief, Heimbach is a citizen of Pennsylvania domiciled at his last known address, 4045 Fish Hatchery Road, Allentown, Pennsylvania  18103.

45.    Upon information and belief, Salasky is a citizen of Pennsylvania domiciled at her last known address, 1124 West North Street, Bethlehem, Pennsylvania  18018.

46.    Pursuant to 28 U.S.C. § 1332(c) and 1332(d)(10), a corporation or unincorporated association is deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is incorporated or organized.

47.    Defendant Amazon.com, Inc. is a Delaware corporation, with a principal place of business in the State of Washington.  And so, this Defendant is a citizen of Delaware and Washington, while Plaintiffs are citizens of Pennsylvania.

48.    Defendant Amazon.com DEDC, LLC is a Delaware corporation, with a principal place of business in the State of Washington.  And so, this Defendant is a citizen of Delaware and Washington, while Plaintiffs are citizens of Pennsylvania.

49.    While named as a defendant, Amazon.com DEDC, Inc. does not currently exist.

50.     Defendant Integrity Staffing Solutions, Inc. is a Delaware corporation, with a principal place of business in Delaware.  And so, this Defendant is a citizen of Delaware, while Plaintiffs are citizens of Pennsylvania.

## V.     OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

51.     Venue is proper in this District pursuant to 28 U.S.C. § 1446(a) because the Philadelphia County Court of Common Pleas, where this action was filed and had been pending prior to removal, is a state court within this federal district and division.

52.     Defendants will promptly file a certified copy of this Notice of Removal with the Prothonotary for the Philadelphia County Court of Common Pleas in accordance with 28 U.S.C. § 1446(d).

53.     Written notice of the filing of this Notice of Removal has been or will be given to Plaintiffs in accordance with 28 U.S.C. § 1446(d).

54.     Integrity has been informed that the Amazon Defendants will remove this action and has consented to removal.  A copy of Integrity's Notice of Consent is attached hereto as Exhibit G.

55.     A completed Federal Civil Cover Sheet accompanies this Notice of Removal.

56.     If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present both a brief and oral argument in support of its position that this case is removable.

**WHEREFORE,** Defendants respectfully request that all further proceedings in the Philadelphia County Court of Common Pleas be discontinued and that this suit be removed to the United States District Court for the Eastern District of Pennsylvania.

Date:  November 1, 2013

Respectfully submitted,

MORGAN, LEWIS & BOCKIUS LLP

By:    /s/ Michael J. Puma

      Richard G. Rosenblatt (Bar # 59096)
      Michael J. Puma (Bar # 94463)
      1701 Market Street
      Philadelphia, PA  19103
      215.963.5000 (telephone)
      215.963.5001 (facsimile)

      *Counsel for Defendants*
      *Amazon.com, Inc.,*
      *Amazon.com.DEDC, LLC,*
      *Amazon.com DEDC, Inc.*

## <u>CERTIFICATE OF SERVICE</u>

I, Michael J. Puma, hereby certify that a true and correct copy of the Amazon Defendants' Notice of Removal (and Exhibits A-G thereto) was filed by hand with the clerk of the United States District Court for the Eastern District of Pennsylvania and was served via electronic mail and overnight delivery this 1st day of November, 2013 upon:

Peter Winebrake, Esq.
R. Andrew Santillo, Esq.
Mark J. Gottesfeld, Esq.
WINEBRAKE & SANTILLO, LLC
715 Twining Road
Suite 211
Drescher, PA  19025

Jerry E. Martin, Esq.
David W. Garrison, Esq.
Scott P. Tift, Esq.
Seth M. Hyatt, Esq.
BARRETT JOHNSTON, LLC
217 Second Avenue North
Nashville, TN  37201

Kimberly Gost, Esq.
LITTLER MENDELSON
Three Parkway
1601 Cherry Street
Suite 1400
Philadelphia, PA  19102

s/ Michael J. Puma
Michael J. Puma

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| NEAL HEIMBACH AND KAREN SALASKY, on behalf of themselves and others similarly situated,<br><br>        Plaintiffs,<br><br>    v.<br><br>AMAZON.COM, INC. AMAZON.COM DEDC, LLC, AMAZON.COM DEDC, INC. and INTEGRITY STAFFING SOLUTIONS, INC.<br><br>        Defendants. | CIVIL ACTION NO. |

**NOTICE OF REMOVAL FROM STATE COURT**

Defendants Amazon.com, Inc., Amazon.com DEDC, LLC, and Amazon.com DEDC, Inc.[1] (collectively, "the Amazon Defendants"), by their undersigned attorneys, hereby give notice that, pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, this action is removed from the Philadelphia County Court of Common Pleas to the United States District Court for the Eastern District of Pennsylvania.  As grounds for removal, the Amazon Defendants state as follows:

**I.      THE STATE COURT ACTION**

1.      On or about September 27, 2013, Plaintiff Neal Heimbach ("Heimbach") commenced a putative class action by Complaint against the Amazon Defendants and Integrity Staffing Solutions, Inc. ("Integrity" and collectively with the Amazon Defendants, "Defendants") entitled Heimbach v. Amazon.com, Inc. et al., Case No. 003526, in the

---

[1]      Although named as a defendant, Amazon.com DEDC, Inc. does not currently exist.

Philadelphia County Court of Common Pleas (the "Complaint").  A true and correct copy of the Complaint is attached as Exhibit A.

2.      On or about October 4, 2013, counsel for the Amazon Defendants and counsel for Integrity both accepted service of the Complaint.

3.      On or about October 10, 2013, Heimbach and Defendants agreed upon and entered into a Stipulation whereby Defendants were permitted to move, answer, or otherwise respond to the Complaint on or before November 8, 2013.  A true and correct copy of the Stipulation is attached as Exhibit B.

4.      On or about October 21, 2013, a Class Action Initiation Order was entered in the Philadelphia County Court of Common Pleas.  A true and correct copy of the Class Action Initiation Order is attached as Exhibit C.

5.      On or about October 30, 2013, the First Amended Complaint was filed in the Philadelphia County Court of Common Pleas (the "Amended Complaint").  A true and correct copy of the Amended Complaint is attached as Exhibit D.  The Amended Complaint added Karen Salasky ("Salasky") as a named plaintiff.  As alleged, Salasky was an employee of Integrity.  Id. at ¶ 16.  This was the first allegation in any pleading that named any former Integrity employee as a plaintiff in this case.  In that regard, the Amended Complaint confirms that the original named Plaintiff (Heimbach) was employed by the Amazon Defendants, not Integrity.  Id. at ¶ 14.

6.      On or about October 30, 2013, Plaintiffs and Defendants agreed upon and entered into a Stipulation whereby Defendants were permitted to move, answer, or otherwise respond to the Complaint on or before December 6, 2013.  A true and correct copy of the October 30, 2013 Stipulation is attached as Exhibit E.

7.      No other proceedings have been held in this action, and the Summons, Complaint, Class Action Initiation Order, October 10, 2013 Stipulation, and October 30 2013 Stipulation constitute all processes and pleadings in this action.

8.      Plaintiffs allege that Defendants jointly operate a 600,000 square foot logistics facility located in Breinigsville, Pennsylvania (the "Facility") and that Defendants did not properly compensate them while they worked at the Facility.   See Exhibit D (Amended Complaint), ¶¶ 12-16, 49.  More specifically, Plaintiffs allege that Defendants failed to comply with the requirements of the Pennsylvania Minimum Wage Act ("PMWA"), 43 Pa. Cons. Stat. §§ 333.102 et seq.  Id. at ¶ 49.  Plaintiffs assert claims on behalf of a putative class of other individuals who have worked for Defendants at the Facility since September 27, 2010.[2]  Id.

## II.     REMOVAL IS TIMELY

9.      This Notice of Removal is timely filed, pursuant to 28 U.S.C. § 1446(b), as it is being filed within thirty (30) days after October 4, 2013, the date upon which the Amazon Defendants accepted service of Plaintiffs' Complaint.

10.     No previous Notice of Removal has been filed with this Court for the relief sought herein.

## III.    GROUNDS FOR REMOVAL

11.     28 U.S.C. § 1441 establishes when an action is removable.  28 U.S.C. § 1441(a) provides that "any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending."

---

[2]      Defendants do not concede, and reserve the right to contest, Plaintiff's allegation that this lawsuit properly can proceed as a class action.

12.     This Court's subject matter jurisdiction, and the basis for removal, is founded upon 28 U.S.C. §§ 1332, 1441, 1446, and 1453.

## IV.     ORIGINAL SUBJECT MATTER JURISDICTION

13.     The Court has original jurisdiction over this action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part in 28 U.S.C. § 1332(d)(2).

14.     CAFA provides for federal subject matter jurisdiction over any class action in which (1) the matter in controversy exceeds a specified jurisdictional minimum of $5 million, (2) the aggregate number of putative class members in all proposed plaintiff classes is at least 100, and (3) any member of a class of plaintiffs is a citizen of a different state from any defendant.  28 U.S.C. § 1332(d)(2), 1332(d)(5).

15.     Although Defendants deny Plaintiffs' factual allegations and that they or the class they purport to represent is entitled to the relief requested, based on Plaintiffs' allegations in the Amended Complaint and prayer for relief, all requirements for jurisdiction under CAFA have been met in this case.  Accordingly, diversity of citizenship exists under CAFA, and this Court has original jurisdiction over this action pursuant to 28 U.S.C. § 1332(d)(2).

### A.     The Amount Plaintiff Places in Controversy Exceeds $5 Million

16.     Although Plaintiffs' Amended Complaint is silent on the specific amount of damages, Plaintiffs' bare allegations are enough to show that the amount in controversy exceeds the jurisdictional minimum.[3]

17.     When a complaint does not aver "that the amount in controversy is less than the jurisdictional minimum" required under CAFA, as is the case here, the case will only be

---

[3]     Defendants dispute, and reserve the right to contest, that any amount is owed to either Plaintiffs or the putative class members that they seek to represent.  Yet, the amount in controversy requirement is satisfied for purposes of removal by Plaintiffs' allegations in the Amended Complaint.

remanded "if it appears to a legal certainty that the plaintiff cannot recover the jurisdictional amount." See Frederico v. Home Depot, Inc., 507 F.3d 188, 197 (3rd Cir. 2007).  Congress has stated that "if a federal court is uncertain about whether 'all matters in controversy' in a purported class action 'do not in the aggregate exceed the sum or value of $5,000,000,' the court should err in favor of exercising jurisdiction over the case." See S. REP. 109-14, at 42 (2005) (citation omitted).

18.     For cases being removed pursuant to CAFA, "determining the amount in controversy begins with a reading of the complaint filed in the state court." Frederico, 507 F.3d at 197 (quoting Samuel–Bassett v. KIA Motors America, Inc., 357 F.3d 392, 398 (3d Cir. 2004)). In this matter, Plaintiffs purport to represent a class consisting of all "Warehouse Workers" that have worked at the Facility since September 27, 2010. See Exhibit D (Amended Complaint), ¶¶ 35-36.

19.     Plaintiffs allege that Defendants violated the PMWA by not compensating all Warehouse Workers during the end-of-shift screening process that "routinely took up to between 10 and 20 minutes for Plaintiffs and other Warehouse Workers to complete, and, with delays, . . . could take over 20 minutes." See Exhibit D (Amended Complaint), ¶ 26.  Plaintiffs allege further that the Defendants violated the PMWA by not compensating all Warehouse Workers for the screening process during meal breaks that "usually takes 7 to 10 minutes for Plaintiffs to complete, and, with delays . . . can last longer." Id. at ¶ 33.

20.     Taken together, Plaintiffs explicitly claim that each member of the putative class is entitled to compensation for 17 to 30-plus minutes, and possibly more, of uncompensated time for every day a putative class member has worked at the Facility since September 27, 2010.  This is the equivalent of at least 68 to 120 minutes per week, with the median being at least 94

minutes per week, because the putative class members almost uniformly have worked no less than four days per week and often more.

21.     Plaintiffs allege further that Defendants "automatically deducted 30 minutes from Plaintiffs' and other Warehouse Workers' compensable time each shift for a purported lunch break," "required Plaintiffs and other Warehouse Workers to remain at their work locations within the Facility until the start of the unpaid meal period," and required putative class members to "take several minutes" walking to time clocks and clocking out at lunch.  See Exhibit D (Amended Complaint), ¶¶ 28-30.

22.     Taken together, these allegations of the Amended Complaint appear to claim that the putative class has been deprived of more than 10 minutes out of their 30 minute lunch break (i.e. several minutes of walking and then 7-10 minutes or more of screening), which reduces the unpaid lunch break (according to Plaintiffs' allegations) to less than 30 minutes.  In so doing, it is reasonable to assume that Plaintiffs are seeking compensation for the entirety of their lunch breaks.  See 29 CFR 785.19 (defining non-compensable "bona fide meal period" as usually any amount of time 30-minutes or more); 29 CFR 785.18 (stating that 5 to 20 minutes of "rest" is compensable); see, e.g., Atkinson v. House of Raeford Farms, Inc., 6:09-CV-01901-JMC, 2012 WL 2871747 (D.S.C. July 12, 2012) (finding that a lunch break under 20 minutes is actually a compensable break).  Defendants dispute that the Plaintiffs could recover this relief under Pennsylvania law or that the factual record will support their allegations, but under Plaintiffs' theory the putative class members would be entitled to a total amount of at least 160 to 200 minutes per week in alleged uncompensated time, with the median being at least 180 minutes.

23.     Plaintiffs seek to recover not only purported damages accrued at the time of filing, but also damages that continue to accrue during the course of this lawsuit.  See Exhibit D

(Amended Complaint), ¶ 35-36 (stating that the action is brought on behalf of Plaintiffs and "*all* individuals employed by Amazon who, during any workweek *since* September 27, 2010, were subjected to a security screening process . . . ." (emphasis added)).

24.    Accordingly, the amount of continuing liability for any current hourly employee within the putative class should be considered in calculating the amount in controversy.  See Broglie v. MacKay-Smith, 541 F.2d 453, 455 (4th Cir. 1976) ("[D]amages which the plaintiff claims will accrue in the future are properly counted against the jurisdictional amount if a right to future payments . . . will be adjudged in the present suit.").  This concept is common in employment disputes involving back-pay, front-pay, or lost wages, with courts routinely including liability that continues throughout litigation in the amount in controversy.  See, e.g., Chabal v. Reagan, 822 F.2d 349 (3d Cir. 1987) (holding that "the amount in controversy cannot be considered only the amount of back pay accrued at the time of filing," but should also should consider whether "recovery would exceed [the minimum] through the continuing accrual of back pay during the course of litigation").[4]

---

[4]    See also, e.g., Shaw v. Gwatney, 795 F.2d 1351, 1355-56 (8th Cir. 1986) (the amount of a claim for back pay "is not the amount . . . accrued at the time of filing but the total amount of back pay the plaintiff stands ultimately to recover in the suit"); Goble v. Marsh, 684 F.2d 12, 15 (D.C. Cir. 1982) ("By its very nature, a back pay claim continues to accrue between filing of the complaint and entry of final judgment."); Andrews v. E.I. Du Pont de Nemours & Co., 447 F.3d 510, 515 (7th Cir. 2006) (considering future lost wages as factor in satisfying jurisdictional minimum); White v. Loomis Armored US, Inc., 729 F. Supp. 2d 897, 902 (E.D. Mich. 2010) ("With respect to the lost wages, courts have used the wages the plaintiff stands to recover by the time the case concludes in calculating the amount in controversy."); Reinhardt v. Mont. Human Rights Bureau, 2010 WL 5391280, at *3 (D. Mont. Dec. 17, 2010) (including alleged back- and front-pay in jurisdictional analysis, both of which were still accruing during litigation); DeWolff v. Hexacomb Corp., 2009 WL 2370723, at *3 (W.D. Mich. July 30, 2009) (concluding that if plaintiff prevails, he could recover back-pay "for the period from the filing of the complaint until entry of judgment in this case"); Logsdon v. Duron, Inc., 2005 WL 1163095, at *4-5 (M.D. Fla. May 17, 2005) (using back- and front-pay accruing up to and until the time of trial in finding that plaintiff's complaint satisfied the amount-in-

25.     The ruling in Mazzucco v. Kraft Foods Global, Inc., No. 11–2430, 2011 WL 6935320 (D.N.J. Nov. 23, 2011), is instructive.  In Mazzucco, the plaintiff in a wage and hour dispute defined the putative class—just as Plaintiffs have here—to include current and former employees.  Id. at *7.  Noting that alleged violations continued throughout the lawsuit, the Court held:

> An accurate reflection of damages would include the unpaid wages during the course of the litigation.  The right to collect damages accruing subsequent to the filing of the complaint will be adjudicated in this matter.  Therefore, it is proper for this Court to include those damages in its amount in controversy analysis.

Id. at *8 (internal citations omitted); accord Falatous v. Johnson & Johnson, No. 07-1572, 2007 WL 3256833, at *9-10 (D.N.J. Nov. 5, 2007) (finding the application of this approach to a wage and hour class action consistent with "the norm in employment cases in which backpay and frontpay are routinely awarded").  The same reasoning applies to Plaintiffs' claims here.[5]

26.     To determine the appropriate time period for assessing the amount in controversy where damages continue to accrue after a complaint is filed, courts have relied upon the median interval between the time of filing a civil case in the district through disposition after trial, as reported annually by the Administrative Office of the United States Courts.  See Mazzucco, 2011 WL 6935320, at *8; Falatous, 2007 WL 3256833, at *10; DeWolff, 2009 WL 2370723, at *3.

---

controversy requirement); Savage v. Envirotest Sys. Corp., 1996 WL 732551, at *3 (D. Conn. Dec. 13, 1996) (observing that "[i]t is reasonable to assume that this action, allowing for discovery and dispositive motions, will not be tried for another year . . . [t]hus, if [plaintiff] ultimately prevails, her accrued backpay and employment benefits alone will likely exceed [the jurisdictional minimum]").

[5]     Taking into account any damages accruing after a lawsuit is filed is entirely consistent with the general rule that jurisdiction must be determined based upon the circumstances prevailing at the time of removal.  Whether such damages are "in controversy" is still determined by analyzing a plaintiff's complaint at that time, even though those damages may accrue after the lawsuit is filed.  See, e.g., Mazzucco, 2011 WL 6935320, at *3 (as applied to future damages, "limiting the amount in controversy analysis to the date upon which the removal was filed is too restrictive [and] an appropriate amount in controversy analysis considers the pleadings as well as damages accruing in the future").

Other courts have simply estimated the time it would take until the case would be tried.  See, e.g., Savage, 1996 WL 732551, at *3.

27.     The median time interval from the filing of a civil case in the Eastern District of Pennsylvania through trial is 19.3 months.  See Federal Judicial Caseload Statistics, Table C-5, "U.S. District Courts—Median Time Intervals From Filing to Disposition of Civil Cases Terminated, by District and Method of Disposition, During the 12-Month Period Ending March 31, 2012," available online at http://www.uscourts.gov/Viewer.aspx?doc=/uscourts/Statistics/ FederalJudicialCaseloadStatistics/2012/tables/C05Mar12.pdf (last visited October 30, 2013). This was several months shorter than both the national median (23.4 months) and the median for all districts within the Third Circuit (23.7 months).  Id.  Undoubtedly, moreover, this period is shorter than reasonably can be anticipated for a class action such as this matter.

28.     In any event, using just the median interval for civil cases in the Eastern District of Pennsylvania, a potential trial in this matter will not be completed until May 7, 2015—19 months and 10 days from the date this action was initiated.  Accordingly, the putative class members' claimed damages encompass at least the dates between September 27, 2010 and May 7, 2015.

29.     Plaintiffs state in the Amended Complaint that putative class members are entitled to the following relief:

> during weeks in which Plaintiffs' and the class members' combined paid and unpaid compensable time exceeds 40 hours, Plaintiffs and the class members are entitled to (i) compensation at their regular pay rate for uncompensated hours worked under 40 hours and (ii) compensation at their overtime premium pay rate for uncompensated hours worked over 40 hours.  Plaintiffs do not seek damages for those workweeks in which the combined paid and unpaid compensable time does not exceed 40 hours.

See Exhibit D (Amended Complaint), ¶ 49.

30.    To determine damages and potential members of the putative class, the Amazon Defendants based their assumptions on the following:[6]

a) If the sum of the employee's weekly regular worked hours plus the unpaid time did not exceed 40 hours, the employee was awarded zero damages.

b) If the sum of the employee's weekly regular worked hours plus the unpaid time did exceed 40 hours, the unpaid time up to 40 hours was paid at the employee's straight time rate and the unpaid time over 40 hours was paid at the employee's overtime rate.

c) The employee's straight time rate is equal to the employee's hourly rate plus any shift differential.

d) The employee's overtime pay rate is the straight time rate plus any shift differential multiplied by one-and-one-half.

e) If an employee was not employed or was on leave for a portion of a week then that week is excluded from the damage estimate and class of putative class members.

Exhibit F, ¶ 8 (Declaration of Amy J. Purdie).

---

[6]    The Amazon Defendants utilize bi-weekly payroll data, as employees are paid on every other Friday for work conducted in the prior two weeks from Sunday through Saturday. Exhibit F, ¶ 5 (Declaration of Amy J. Purdie).  The Amazon Defendants' payroll data contained the total number of regular hours and overtime hours the employee earned in each two-week pay period but did not show how the hours were distributed across the two weeks. Id. at ¶ 6.  Accordingly, the following assumptions were made in calculating damages:

a)    If the employee had 80 regular hours over a two-week period, that employee worked 40 regular hours in each week.

b)    If the employee had less than 80 regular hours and more than zero overtime hours over a two-week period, that employee worked 40 hours in one week of the pay period and the remainder of the regular hours in the other week.

c)    If the employee had less than 80 regular hours and no overtime hours over a two-week period, that employee worked half of the regular hours in the first week and half of the regular hours in the second week.

Id. at ¶ 7.

31.     The assumptions were based on data provided by the Amazon Defendants reflecting hire dates, leave of absence dates, and termination dates for the putative class members.  See Exhibit F, ¶ 3 (Declaration of Amy J. Purdie).

32.     Using Plaintiffs' definition of Warehouse Workers, the theory of relief noted in the Amended Complaint, and the above-noted data and assumptions, the Amazon Defendants have determined that there are currently at least 3,730 members in Plaintiffs' putative class – all hourly employees of the Amazon Defendants who would have passed through security screening.  See Exhibit D (Amended Complaint), ¶¶ 17, 35-36, 49; see also Exhibit F, ¶ 9 (Declaration of Amy J. Purdie).

33.     Based on the noted number of putative class members, their work weeks during the claimed liability period described above, and the median uncompensated wages alleged in the Amended Complaint (without counting the apparent claim to recover for each unpaid lunch period), 94 minutes per week, the putative class seeks $5,036,431 in damages solely against the Amazon Defendants.[7]  See Exhibit F, ¶ 10 (Declaration of Amy J. Purdie).  This amount alone exceeds the jurisdictional threshold of $5 million under CAFA.[8]

34.     Based on the noted number of putative class members, their work weeks during the claimed liability period, and the highest enumerated uncompensated wages in the Amended Complaint (without counting the apparent claim to recover for each unpaid lunch period), 120

---

[7]     This amount includes $3,015,287 in damages calculated between September 27, 2010 and the date of the Amazon Defendants' last payroll, October 5, 2013, and the additional damages through anticipated trial from October 6, 2013 to May 7, 2015, in an amount equaling $2,021,144.  See Exhibit F, ¶ 10 (Declaration of Amy J. Purdie).

[8]     Defendants deny the validity of Plaintiffs' allegations, and/or that Plaintiffs would be entitled to any of the relief they seek.  However, for purposes of jurisdiction under CAFA, Defendants accept Plaintiffs' allegations solely for the purpose of establishing that Plaintiffs, through these allegations, seek damages in excess of the jurisdictional requirement.

minutes per week, Plaintiffs seek $6,567,519 in damages solely against the Amazon Defendants.[9]
See Exhibit F, ¶ 11 (Declaration of Amy J. Purdie).  This exceeds the jurisdictional threshold of
$5 million under CAFA by an even greater amount.

35.     Plaintiffs, however, also seek attorneys' fees.    See Exhibit D (Amended
Complaint), Prayer for Relief, ¶ C.  In determining the amount in controversy for purposes of
removal, attorneys' fees in the amount of 30% may be aggregated with the claimed damages.
Frederico, 507 F.3d at 199 (considering attorneys' fees of 30% when calculating amount in
controversy); Lorah v. SunTrust Mortgage, Inc., CIV.A. 08-703, 2009 WL 413113 (E.D. Pa.
Feb. 18, 2009); Hoffman v. Nutraceutical Corp., CIV. 12-5803-ES-SCM, 2013 WL 885169, *4
(D.N.J. Jan. 24, 2013); Andrews v. Home Depot U.S.A., Inc., No. 03-5200, 2010 WL 5464303,
at *3 (D. N.J. Dec. 29, 2010).

36.     Based on the noted number of putative class members, their work weeks during
the claimed liability period, and the median uncompensated wages alleged in the Amended
Complaint (without counting the apparent claim to recover for each unpaid lunch period), 94
minutes per week, Plaintiffs seek $1,510,929 in attorneys' fees solely against the Amazon
Defendants.  When combined with underlying claimed damages, this results in claimed damages
of $6,547,360.

37.     Based on the noted number of putative class members, their work weeks during
the claimed liability period, and the highest enumerated uncompensated wages alleged in the
Amended Complaint, 120 minutes per week (without counting the apparent claim to recover for
each unpaid lunch period), Plaintiffs seek $1,970,255 in attorneys' fees solely against the

---

[9]     This amount includes $3,929,862 in damages calculated between September 27, 2010 and
the date of the Amazon Defendants' last payroll, October 5, 2013, and the additional
damages through anticipated trial from October 6, 2013 to May 7, 2015, in an amount
equaling $2,637,657. See Exhibit F, ¶ 11 (Declaration of Amy J. Purdie).

Amazon Defendants.  When combined with underlying claimed damages, this results in claimed damages of $8,537,774.

38.     If Plaintiffs seek to recover additional wages for the entirety of each 30-minute lunch break, which appears to be their theory as described above, damages claimed solely against the Amazon Defendants would increase to $10,514,052 based on their median claimed end of day wait times (15 minutes) and $11,860,748 based on their higher claimed end of day wait times (20 minutes).  See Exhibit F, ¶¶ 12-13 (Declaration of Amy J. Purdie).  These totals do not include attorneys' fees of 30%, which would result in increased claimed damages of $13,668,267 and $15,418,972, respectively.

39.     The Amazon Defendants also offer no estimate of damages against Integrity.  In light of Plaintiffs' claims against Integrity in the Amended Complaint, Plaintiffs seek additional damages well beyond the amounts noted against the Amazon Defendants and in an amount that would exceed removal requirements under CAFA by an even greater amount.

**B.     There Are Over 100 Putative Class Members**

40.     Plaintiffs purport to assert claims on behalf of a putative class of all warehouse workers that have worked at the Facility since September 27, 2010 and have combined paid and unpaid time during a given week exceeding 40 hours.  See Exhibit D (Amended Complaint), ¶¶ 12, 35-36, 49.  Based on this definition, the putative class currently includes at least 3,730 putative class members who were employed by the Amazon Defendants.

41.     Plaintiffs further allege that "Amazon and ISS have separately employed hundreds of Warehouse Workers at the Facility since September 27, 2010."  See Exhibit D (Amended Complaint), ¶ 18.  Thus, even by Plaintiffs' account the requirement for a class of at least 100 individuals is satisfied.

C.      **Diversity Exists Between the Parties**

42.     For diversity purposes, a person is a "citizen" of the state in which he or she is domiciled, and residence alone is enough to establish a presumption of domicile.  See Anthony v. Small Tube Mfg. Corp., 535 F. Supp. 2d 506, 515 (E.D. Pa. 2007) (citizenship and domicile are equivalent for diversity purposes); Capato v. Astrue, No. 08-5405, 2010 WL 1076522 at *6 (D.N.J. March 23, 2010) (residency establishes a presumption of domicile) (citing District of Columbia v. Murphy, 314 U.S. 441, 455 (1941)).

43.     Plaintiffs admit to "residing" in Pennsylvania and should be considered citizens of that Commonwealth.  See Exhibit D (Amended Complaint) at ¶¶ 1-2

44.     Upon information and belief, Heimbach is a citizen of Pennsylvania domiciled at his last known address, 4045 Fish Hatchery Road, Allentown, Pennsylvania  18103.

45.     Upon information and belief, Salasky is a citizen of Pennsylvania domiciled at her last known address, 1124 West North Street, Bethlehem, Pennsylvania  18018.

46.     Pursuant to 28 U.S.C. § 1332(c) and 1332(d)(10), a corporation or unincorporated association is deemed to be a citizen of the State where it has its principal place of business and the State under whose laws it is incorporated or organized.

47.     Defendant Amazon.com, Inc. is a Delaware corporation, with a principal place of business in the State of Washington.  And so, this Defendant is a citizen of Delaware and Washington, while Plaintiffs are citizens of Pennsylvania.

48.     Defendant Amazon.com DEDC, LLC is a Delaware corporation, with a principal place of business in the State of Washington.  And so, this Defendant is a citizen of Delaware and Washington, while Plaintiffs are citizens of Pennsylvania.

49.     While named as a defendant, Amazon.com DEDC, Inc. does not currently exist.

50.     Defendant Integrity Staffing Solutions, Inc. is a Delaware corporation, with a principal place of business in Delaware.  And so, this Defendant is a citizen of Delaware, while Plaintiffs are citizens of Pennsylvania.

## V.     OTHER PREREQUISITES FOR REMOVAL HAVE BEEN SATISFIED

51.     Venue is proper in this District pursuant to 28 U.S.C. § 1446(a) because the Philadelphia County Court of Common Pleas, where this action was filed and had been pending prior to removal, is a state court within this federal district and division.

52.     Defendants will promptly file a certified copy of this Notice of Removal with the Prothonotary for the Philadelphia County Court of Common Pleas in accordance with 28 U.S.C. § 1446(d).

53.     Written notice of the filing of this Notice of Removal has been or will be given to Plaintiffs in accordance with 28 U.S.C. § 1446(d).

54.     Integrity has been informed that the Amazon Defendants will remove this action and has consented to removal.  A copy of Integrity's Notice of Consent is attached hereto as Exhibit G.

55.     A completed Federal Civil Cover Sheet accompanies this Notice of Removal.

56.     If any question arises as to the propriety of the removal of this action, Defendants request the opportunity to present both a brief and oral argument in support of its position that this case is removable.

**WHEREFORE,** Defendants respectfully request that all further proceedings in the Philadelphia County Court of Common Pleas be discontinued and that this suit be removed to the United States District Court for the Eastern District of Pennsylvania.

Date:  November 1, 2013    Respectfully submitted,

            MORGAN, LEWIS & BOCKIUS LLP

            By: <u>/s/ Michael J. Puma</u>

              Richard G. Rosenblatt (Bar # 59096)
              Michael J. Puma (Bar # 94463)
              1701 Market Street
              Philadelphia, PA  19103
              215.963.5000 (telephone)
              215.963.5001 (facsimile)

              *Counsel for Defendants*
              *Amazon.com, Inc.,*
              *Amazon.com.DEDC, LLC,*
              *Amazon.com DEDC, Inc.*

## CERTIFICATE OF SERVICE

I, Michael J. Puma, hereby certify that a true and correct copy of the Amazon Defendants' Notice of Removal (and Exhibits A-G thereto) was filed by hand with the clerk of the United States District Court for the Eastern District of Pennsylvania and was served via electronic mail and overnight delivery this 1st day of November, 2013 upon:

> Peter Winebrake, Esq.
> R. Andrew Santillo, Esq.
> Mark J. Gottesfeld, Esq.
> WINEBRAKE & SANTILLO, LLC
> 715 Twining Road
> Suite 211
> Drescher, PA  19025
>
> Jerry E. Martin, Esq.
> David W. Garrison, Esq.
> Scott P. Tift, Esq.
> Seth M. Hyatt, Esq.
> BARRETT JOHNSTON, LLC
> 217 Second Avenue North
> Nashville, TN  37201
>
> Kimberly Gost, Esq.
> LITTLER MENDELSON
> Three Parkway
> 1601 Cherry Street
> Suite 1400
> Philadelphia, PA  19102

s/ Michael J. Puma
Michael J. Puma