UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE

IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FAIR LABOR STANDARDS ACT (FLSA) and WAGE AND HOUR LITIGATION

    Master File No. 14-MD-2504        JUDGE HEYBURN
    MDL No. 2504

    THIS DOCUMENT RELATES TO:
        Neal Heimbach, et al. v. Amazon.com, Inc., 3:14-cv-204-JGH
        Kelly Pavuk v. Amazon.com, Inc., et al., 3:14-cv-201-JGH

**BRIEF IN SUPPORT OF THE *HEIMBACH* AND
*PAVUK* PLAINTIFFS' MOTION TO LIFT THE STAY**

On March 13, 2014, the Court entered an order staying all proceedings in this MDL action pending the United States Supreme Court's ruling in the Busk action. See Doc. 16. However, the stay order provided that "[a]ny party may file a motion for relief from this stay at anytime." Id. at 2.

Plaintiffs in Heimbach (transferred from Pennsylvania's Eastern District) and Pavuk (transferred from Pennsylvania's Middle District) (collectively "Heimbach/Pavuk") request that the Court lift the stay on their lawsuits. As discussed during the March 4, 2014 status conference, all parties agree that the Supreme Court's anticipated Busk decision is likely to clarify whether the federal FLSA permits employees working in Amazon fulfillment centers to seek compensation for time associated with security screenings. As such, the stay makes good sense for those coordinated actions asserting claims under the FLSA or state laws that mirror the FLSA.

Heimbach/Pavuk, however, do not fit this paradigm. As discussed below, Heimbach/Pavuk consist entirely of Pennsylvania Minimum Wage Act ("PMWA") claims that workers at Amazon's Breinigsville, PA and Hazleton, PA fulfillment centers must be paid for all

1

of the time they are required to be within the fulfillment center premises. This PMWA claim is independent of the FLSA claim asserted in Busk, and courts analyzing the PMWA regularly hold that the state statute differs from the federal statute in important ways. See Sections II.A-B infra. As such, the Supreme Court's anticipated Busk opinion cannot possibly dispose of the Heimbach/Pavuk litigation. For this reason, the Heimbach/Pavuk plaintiffs would like the opportunity to engage in some discovery during the Busk appeal.

### I. *BUSK*, *HEIMBACH*, AND *PAVUK*

#### A. Busk

In Busk, the Ninth Circuit concluded that workers employed at Amazon's Nevada warehouses can state a viable FLSA claim for uncompensated time associated with the security screening process. See Busk v. Integrity Staffing Solutions, Inc., 713 F.3d 525, 530-31 (9th Cir. 2013). As explained by the Busk Court, the entire legal analysis in that case hinges upon interpretation of the 1947 Portal-to-Portal Act ("Portal Act"), which amended the FLSA:

> FLSA, as amended by the Portal-to-Portal Act of 1947, generally precludes compensation for activities that are "preliminary" or "postliminary" to the "principal activity or activities" that the employee "is employed to perform." 29 U.S.C. § 254(a). But preliminary and postliminary activities are still compensable under the Portal-to-Portal Act if they are "integral and indispensable" to an employee's principal activities. Steiner v. Mitchell, 350 U.S. 247, 76 S. Ct. 330, 332, 100 L. Ed. 267 (1956) (changing clothes and showering were "integral and indispensable" to producing batteries). To be "integral and indispensable," an activity must be (1) "necessary to the principal work performed" and (2) "done for the benefit of the employer." Alvarez v. IBP, Inc., 339 F.3d 894, 902-03 (9th Cir. 2003), aff'd on other grounds, 546 U.S. 21, 126 S. Ct. 514, 163 L. Ed. 2d 288 (2005).

Busk, 713 F.3d at 530.

The Supreme Court recently granted the Busk defendant's certiorari petition, and the Court's website allows access to the question presented for review. As indicated, the question

presented in Busk arises entirely under the FLSA's Portal Act: "The question presented is whether time spent in security screenings is compensable under the FLSA, as amended by the Portal-to-Portal Act." See http://www.supremecourt.gov/qp/13-00433qp.pdf.

**B. Heimbach**

Heimbach was initially commenced in the Philadelphia County (PA) Court of Common Pleas and later removed to the Eastern District of Pennsylvania. See Heimbach Docket at Doc. 1. Heimbach does not allege an FLSA claim. See id. at Doc. 1-4 (Amended Complaint). Instead, Heimbach describes a single PMWA count, which consists of the following legal assertions:

> 44. Defendants are employers covered by the PMWA's mandates.
> 45. Plaintiffs and the class members are employees entitled to the PMWA's protections.
> 46. The PMWA entitles employees to compensation for "all hours worked" in a workweek. *See* 43 P.S. § 333.104(a).
> 47. The PMWA requires that employees receive overtime compensation "not less than one and one-half times" the employee's regular rate of pay for all hours worked over 40 in a workweek. *See* 43 P.S. § 333.104(c).
> 48. PMWA defines "Hours Worked" to include *inter alia* "time during which an employee is required by the employer to be on the premises of the employer." 34 Pa. Code §231.1. With respect to meal breaks, PMWA requires, *inter alia*, payment for "time spent on the premises of the employer that is not for the benefit of the employee." *Id.*
> 49. Defendants have violated the PMWA by failing to compensate Plaintiffs and other class members for all hours worked both after their paid shifts and during their unpaid meal breaks. *See* 34 Pa. Code §231.1; *see*, *e.g.*, *Lugo v. Farmers Pride, Inc.*, 967 A.2d 963 (Pa. Super. Ct. 2009). As such, during weeks in which Plaintiffs' and the class members' combined paid and unpaid compensable time exceeds 40 hours, Plaintiffs and the class members are entitled to (i) compensation at their regular pay rate for uncompensated hours worked under 40 hours and (ii) compensation at their overtime premium pay rate for uncompensated hours worked over 40 hours. Plaintiffs do not seek damages for those workweeks in which the combined paid and unpaid compensable time does not exceed 40 hours.

Id. at Doc. 1-4, ¶¶ 44-49.

Amazon and Integrity answered the Heimbach complaint. See id. at Docs. 6-7. Neither Amazon nor Integrity have moved to dismiss Heimbach under the FLSA's Portal Act. This stands in contrast to these defendants' approach in Busk and other actions asserting FLSA claims. See Gibson Docket at Docs. 64-65; Johnson Docket at Doc. 35: Rosenthal Docket at Docs. 9-10; Vance Docket at Doc. 45.

### C. Pavuk

Pavuk was initially commenced in the Luzerne County (PA) Court of Common Pleas and later removed to the Middle District of Pennsylvania. See Pavuk Docket at Docs. 1-2. Pavuk does not allege an FLSA claim. See id. at Doc. 2 (Complaint). Instead, Pavuk describes a single PMWA count that is essentially identical to the above-quoted PMWA count in Heimbach. See id. at Doc. 2, ¶¶ 43-48. As in Heimbach, Amazon answered the Pavuk complaint and never filed a dispositive motion. See id. at Doc. 8.

## II. ARGUMENT

As discussed below, Busk will have little bearing on the PMWA claims asserted in Heimbach/Pavuk. For this reason, the stay in Heimbach/Pavuk should be lifted.

### A. The PMWA Regularly Provides Pennsylvania Employees with Wage and Overtime Benefits that are Independent of the FLSA.

The FLSA invites states to enact laws and regulations that may be different from and more generous than FLSA provisions. See 29 U.S.C. § 218(a); Knepper v. Rite Aid Corp., 675 F.3d 249, 262 (3d Cir. 2012). Indeed, "the purpose behind the FLSA is to establish a national floor under which wage protections cannot drop, not to establish absolute uniformity in minimum wage and overtime standards nationwide at levels established in the FLSA." Pacific Merch. Shipping Ass'n v. Aubry, 918 F.2d 1409, 1425 (9th Cir. 1990); accord Pettis Moving Co. Inc. v. Roberts, 784 F.2d 439, 441 (2d Cir. 1986).

4

In applying the above principles, Pennsylvania courts refuse to casually apply FLSA overtime rules to PMWA claims seeking more expansive overtime coverage or more generous overtime pay. As discussed below, Pennsylvania courts impose FLSA overtime limitations on PMWA claims *only if* such limitations are justified based on the PMWA's clear statutory or regulatory language.

For example, in Bayada Nurses, Inc. v. Commonwealth of Pennsylvania, 8 A.3d 866 (Pa. 2010), the Pennsylvania Supreme Court was called upon to decide whether the PMWA's "domestic services" exemption from overtime coverage should be applied as expansively as its FLSA counterpart. In deciding this issue, the Court carefully compared the PMWA's statutory/regulatory language to the FLSA's counterparts and held that the PMWA's "domestic services" exemption – unlike the FLSA's similar exemption – does not prevent home health aids employed by third-party agencies from receiving overtime pay. See Bayada, 8 A.2d at 880-83. The Court strictly applied the plain language of the PMWA's statutory/regulatory text and refused to overlook textual differences between the competing PMWA and FLSA provisions. See id. It did not matter that this analysis resulted in Pennsylvania home health workers receiving overtime pay that is unavailable to them under the FLSA:

> While the [PMWA]'s exemption for domestic services is more limited than the federal exemption, it is permissible for a state to enact more beneficial wage and hour laws. Indeed, the federal statute establishes only a national floor under which wage protections cannot drop, but more generous protections provided by a state are not precluded. Courts confronting related issues have held that the FLSA does not prohibit state regulation of wages and overtime if the state's standards are more beneficial to workers. Thus, the Commonwealth Court properly concluded that: the FLSA does not supersede state law; Pennsylvania may enact and impose more generous overtime provisions than those contained under the FLSA which are more beneficial to employees; and it is not mandated that state regulation be read identically to, or *in pari materia* with, the federal regulatory scheme. Thus, we reject Bayada's

5

>assertion that federal law compels a different result than that reached by
>the Commonwealth Court.

Id. at 883 (internal citations omitted).

Bayada is just one of many cases in which Pennsylvania courts have refused to impose FLSA limitations on PMWA claims. In another series of cases, health care employees asserted that the PMWA barred their employers from utilizing the "8/80" methodology to calculate overtime pay. See Bordell v. Geisinger Med. Cent., 2013 Pa. Dist. & Cnty. Dec. LEXIS 37 (Pa. C.C.P., Northumberland Cty. May 6, 2013); LeClair v. Diakon Lutheran Soc. Ministries, 2013 Pa. Dist. & Cnty. Dec. LEXIS 1 (Pa. C.C.P., Lehigh Cty. Jan. 14, 2013); Turner v. Mercy Health Sys., 2010 Phila. Ct. Com. Pl. LEXIS 146 (Pa. C.C.P., Phila. Cty. Mar. 10, 2010). While the 8/80 methodology was expressly permitted under the FLSA, see 29 U.S.C. § 207(j), the PMWA contained no such provision. In deciding whether to incorporate the FLSA's 8/80 methodology into the PMWA, the Bordell, LeClair, and Turner Courts carefully analyzed the PMWA's statutory and regulatory language, see Bordell, 2013 Pa. Dist. & Cnty. Dec. LEXIS 37, at *2-12; LeClair, 2013 Pa. Dist. & Cnty. Dec. LEXIS 1, at *6-8; Turner, 2010 Phila. Ct. Com. Pl. LEXIS 146, at *3-9, 11-13, and applied the basic rule that statutes and regulations must be interpreted based on their plain meaning, see Bordell, 2013 Pa. Dist. & Cnty. Dec. LEXIS 37, at *6; LeClair, 2013 Pa. Dist. & Cnty. Dec. LEXIS 1, at *9; Turner, 2010 Phila. Ct. Com. Pl. LEXIS 146, at *5-8. Each court refused to interpret the PMWA's *silence* regarding the federal 8/80 method as permitting its use. See Bordell, 2013 Pa. Dist. & Cnty. Dec. LEXIS 37, at *11; LeClair, 2013 Pa. Dist. & Cnty. Dec. LEXIS 1, at *9; Turner, 2010 Phila. Ct. Com. Pl. LEXIS 146, at *7-8.

Judge Cohill's decision in Truman v. DeWolff, Boberg & Assocs., Inc., 2009 U.S. Dist. LEXIS 57301 (W.D. Pa. July 7, 2009), also is instructive. There, a Pennsylvania employer asserted that the PMWA did not apply to foreign work even though, "[u]nlike the FLSA, the

6

PMWA does not contain an explicit exemption for work performed outside of the United States." See Truman, 2009 U.S. Dist. LEXIS 57301, at *5. Judge Cohill refused to impose the FLSA's foreign work exemption on the PMWA based on the PMWA's mere silence. See id. at *4-11. "If the Pennsylvania legislature had wanted to exempt foreign work from the PMWA it could have expressly included that exemption within the PMWA." Id. at *8; see also Foster v. Kraft Foods Global, Inc., 285 F.R.D. 343, 344-48 (W.D. Pa. 2012) (FLSA's "fluctuating workweek method" of calculating overtime pay not permissible under PMWA in absence of clear statutory or regulatory language permitting the method); Cerutti v. Frito Lay, Inc., 777 F. Supp. 2d 920, 942-45 (W.D. Pa. 2011) (same); Dept. of Labor & Indus. v. Whipple, 6 Pa. D. & C. 4th 418, 421-22 (Pa. C.C.P., Lycoming Cty. 1989) (FLSA's "agricultural" exemptions do not apply to PMWA claims).

In sum, the above court decisions leave no doubt: FLSA overtime restrictions do not apply to PMWA claims in the absence of clear and unambiguous language within the PMWA or PMWA regulations adopting such restrictions. The PMWA's mere silence regarding an FLSA provision is not enough.

### B. The PMWA Does Not Contain Any Equivalent to the FLSA's Portal Act.

Amazon and Integrity can scour the PMWA, see 43 P.S. §§ 333.101, et seq., and the accompanying PMWA regulations, see 34 Pa. Code §§ 231.1, et seq., but they will not find any provision mirroring or even resembling the FLSA's Portal Act. No such provision exists.

In this regard, Judge Nealon's opinion in In re Cargill Meat Solutions Wage and Hour Litig., 632 F. Supp. 2d 368 (M.D. Pa. 2008), is instructive. In Cargill, Pennsylvania meat packers sought to be paid for pre-shift and post-shift "donning and doffing" time under the FLSA and PMWA. See id. at 371-76. The employees' FLSA claims directly implicated the Portal Act

7

and FLSA Section 3(o), which modified the Portal Act to make non-compensable certain clothes-changing and washing activities performed by unionized employees. See Cargill, 632 F. Supp. 2d at 377-78 (discussing Portal Act and 29 U.S.C. § 203(o)).

The employer sought to apply the Portal Act, as modified by Section 3(o), to the employees' PMWA claims. See Cargill, 632 F. Supp. 2d at 392-93. Judge Nealon rejected this argument: "The provisions of the Portal Act and § 203(o) 'indicate Congress's intent to better define the liability of employers under the FLSA. They do not, however, supplant the traditional power of the state to more generously regulate wage and hours via there [sic] own state regulations.'" Id. at 392-94 (quoting Chavez v. IBP, Inc., 2005 U.S. Dist. LEXIS 29714, *120 (E.D. Wash. May 16, 2005)).

In sum, the FLSA's Portal Act has no impact on PMWA claims for unpaid wages.

### C. Compensable Work Hours Under the PMWA Are Determined Based Entirely on PMWA Regulations and Caselaw.

Having eliminated the Portal Act from the pertinent PMWA analysis, we turn to the PMWA's independent definition of hours worked. The PMWA regulations specifically define "hours worked" as:

> time during which an employee is required by the employer to be on the premises of the employer, to be on duty or to be at the prescribed workplace, time spent traveling as part of the duties of the employee during normal working hours and time during which an employee is employed or permitted to work; provided, however, that time allowed for meals shall be excluded unless the employee is required or permitted to work during that time, and provided further, that time spent on the premises of the employer for the convenience of the employee shall be excluded.

34 Pa. Code § 231.1.

In Lugo v. Farmer's Pride, Inc., 967 A.2d 963 (Pa. Super. 2009), a unanimous panel of the Pennsylvania Superior Court held that, under the above definition of "hours worked," poultry

8

workers stated a valid PMWA claim by alleging that they were not paid for time associated with the donning, doffing, and sanitizing of protective gear at the beginning and end of the workday and during unpaid meal breaks. See id. at 966-69. The Lugo Court summarized its reasoning as follows:

> According to the averments of appellants' complaint, appellants were issued their protective gear by appellee after they had arrived at work and were required to wear the protective gear both by appellee and by government regulations. According to the complaint then, appellee required appellants to be on its premises and on duty during the donning, doffing, and sanitizing of the protective gear. If the averments of the complaint are proven true, then clearly the PMWA would consider the time spent donning, doffing, and sanitizing the protective gear as part of the "hours worked" and for which appellants would be owed wages under the PMWA.

Id. at 968. The Court emphasized that this expansive approach to "hours worked" is consistent with the public policy underlying the PMWA. See id. at 968-69.

Notably absent from both the Lugo opinion and 34 Pa. Code § 231.1's regulatory language is any mention of the FLSA, the Portal Act, or any terminology associated with a Portal Act analysis.

### D. The Court Should Lift the Stay on the *Heimbach/Pavuk* Actions.

In Busk, the Supreme Court will resolve important issues regarding whether time associated with workplace security screenings is compensable under the FLSA's Portal Act. The Busk parties will debate whether, under the Portal Act, such activities "are 'preliminary' or 'postliminary' to the 'principal activity or activities' that the employee 'is employed to perform,'" Busk, 713 F.3d at 530 (quoting 29 U.S.C. § 254(a)), and whether such activities "are 'integral and indispensable' to an employee's principal activities," id. (quoting Steiner v. Mitchell, 350 U.S. 247, 76 S. Ct. 330, 332, 100 L. Ed. 267 (1956)).

9

The Supreme Court's resolution of these Portal Act issues will not impact this Court's analysis of the PMWA claims in Heimbach/Pavuk, which, as discussed above, have an independent basis under the PMWA regulations and caselaw.  As such, the primary rationale underlying the current litigation stay does not apply to the Heimbach/Pavuk actions, and the stay should be lifted so that some discovery can get underway.

### III. CONCLUSION

For the above reasons, the Court should enter the accompanying proposed order lifting the litigation stay in the Heimbach/Pavuk actions.

Date:  April 23, 2014

Respectfully,

/s/ Pete Winebrake
Pete Winebrake
R. Andrew Santillo
Mark Gottesfeld
WINEBRAKE & SANTILLO, LLC
715 Twining Road, Suite 211
Dresher, PA 19025
Phone:  (215) 884-2491

Jerry E. Martin
David W. Garrison
Scott P. Tift
Seth M. Hyatt
BARRETT JOHNSTON, LLC
217 Second Avenue North
Nashville, TN 37201
Phone: (615) 244-2202

J. Chris Sanders
CHRIS SANDERS LAW PLLC
The Esterle House
1228 E. Breckinridge Street
Louisville, KY 40220
Phone:  (502) 558-6337

Todd O'Malley
Thomas J. Gilbride
O'MALLEY & LANGAN, PC

201 Franklin Avenue
Scranton, PA  18503
Phone:  (570) 344-2667

(Co-Counsel for Plaintiffs in the <u>Pavuk</u> and <u>Heimbach</u> Actions)