UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION

| | |
|---|---|
| IN RE: AMAZON.COM, INC., FULFILLMENT CENTER FAIR LABOR STANDARDS ACT (FLSA) AND WAGE AND HOUR LITIGATION | Master File No. 3:14-md-2504 MDL Docket No. 2504 |
| THIS DOCUMENT RELATES TO: *Heimbach et al. v. Amazon.com, Inc. et al.*, | Case No. 3:14-cv-204-DJH |

\* \* \* \* \*

## MEMORANDUM OPINION AND ORDER

On April 2, 2024, the Court preliminarily approved the class-action settlement and incentive payments to class representatives; conditionally certified the class for settlement purposes; appointed class counsel and the claims administrator; and approved the notice and claim form to be sent to class members. (Docket No. 115) In an unopposed motion, Plaintiffs now seek final approval of attorney fees, incentive payments to class representatives, and payment to the claims administrator, as well as final approval of the settlement and certification of the class for settlement purposes. (D.N. 116; *see* D.N. 117) There have been no objections to the settlement and very few opt-outs. The Court held a final fairness hearing on June 12, 2024, and heard from the parties in support of the settlement. (D.N. 118) For the reasons set forth below, the Court will grant the plaintiffs' motion for final approval.

**I.**

This case, like others in the Amazon MDL, involves claims that employees of Amazon and its staffing agencies were required to undergo security checks for which they were not compensated. The facts of the case are set out in prior orders. (*See, e.g.*, D.N. 115, PageID.2523–25)

1

In its April 2, 2024 Order, the Court conditionally certified the following class for settlement purposes:

> All current and former non-exempt employees of Defendants Amazon.com, Inc., Amazon.com.DEDC, LLC, Amazon.Com DEDC, Inc., and/or Integrity Staffing Solutions Inc. who w[ere] credited with working forty (40) or more hours (exclusive of vacation, sick, or other leave time) during at least one week at Amazon's Breinigsville, PA warehouse (a.k.a. "ABE2") during the time periods of 9/5/10 - 3/31/20 and/or 4/5/21 - 11/30/22.

(*Id.*, PageID.2536)  Notice was sent to 21,417 class members; as of June 5, 2024, the claims administrator had received eighteen exclusion requests and no objections.  (D.N. 116-2, PageID.2581 ¶¶ 8–12)

The total maximum settlement amount under the parties' agreement is $4,399,678.  (D.N. 112-2, PageID.2448 ¶ 4)  That sum includes payments to individual class members who did not opt out; attorney fees and costs; incentive payments to the named plaintiffs; and fees for administration of the settlement.  (D.N. 112-1, PageID.2428 ¶ 12(c))  Any class member who did not timely request exclusion from the class will release claims against Defendants arising out of the allegations made in this case.  (*Id.*, PageID.2449)

**II.**

Much of the final analysis will be the same as at the preliminary stage, though the Court now has some additional information before it.

**A.     Approval of Settlement**

Pursuant to Federal Rule of Civil Procedure 23, the Court may approve a class-action settlement "only after a hearing and only on finding that [the settlement] is fair, reasonable, and adequate" based on the following factors:

(A)     the class representatives and class counsel have adequately represented the class;
(B)     the proposal was negotiated at arm's length;

2

      (C)      the relief provided for the class is adequate, taking into account:
              (i)      the costs, risks, and delay of trial and appeal;
              (ii)     the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
              (iii)    the terms of any proposed award of attorney's fees, including timing of payment; and
              (iv)    any agreement required to be identified under Rule 23(e)(3); and
      (D)      the proposal treats class members equitably relative to each other.

Fed. R. Civ. P. 23(e)(2). The rule largely encompasses the factors that have been employed by the Sixth Circuit:

> (1) the "risk of fraud or collusion," (2) the "complexity, expense and likely duration of the litigation," (3) the "amount of discovery engaged in by the parties," (4) the "likelihood of success on the merits," (5) the "opinions of class counsel and class representatives," (6) the "reaction of absent class members," and (7) the "public interest."

*Doe v. Déjà Vu Consulting, Inc.*, 925 F.3d 886, 894–95 (6th Cir. 2019) (quoting *Int'l Union, United Auto., Aerospace, & Agr. Implement Workers of Am. (UAW) v. Gen. Motors Corp.*, 497 F.3d 615, 631 (6th Cir. 2007)). In addition to the seven factors listed above, the Sixth Circuit has also looked to whether "the settlement 'gives preferential treatment to the named plaintiffs while only perfunctory relief to unnamed class members.'" *Pelzer v. Vassalle*, 655 F. App'x 352, 359 (6th Cir. 2016) (quoting *Williams v. Vukovich*, 720 F.2d 909, 925 n.11 (6th Cir. 1983)).

The Sixth Circuit does not appear to have considered the new version of Rule 23(e)(2). Since the amendment, courts within the Sixth Circuit have been applying both sets of factors. *See, e.g.*, *In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*, No. 3:18-CV-825-BJB, 2023 WL 5997294, at *2 (W.D. Ky. Sept. 15, 2023) (citing *Doe*, 925 F.3d at 894–95); *Elliott v. LVNV Funding, LLC*, No. 3:16-CV-675-RGJ, 2019 WL 4007219, at *7 (W.D. Ky. Aug. 23, 2019) (citing *Peck v. Air Evac EMS, Inc.*, No. CV 5:18-615-DCR, 2019 WL 3219150, at *5 (E.D. Ky. July 17, 2019)). Given their substantial overlap, the two sets can be considered together.

### 1. Adequate Representation/Amount of Discovery/Counsel and Representatives' Opinions

This case has been litigated for more ten years, with discovery throughout, and counsel on both sides have extensive experience in similar cases. (*See* D.N. 112-2, PageID.2457–64 ¶¶ 1–19) In light of these factors, the opinions of counsel and the class representatives, all of whom favor the settlement, support preliminary approval. *See Doe*, 925 F.3d at 899. The absence of any objections to the settlement and the small number of requests for exclusion (approximately .0009%) likewise support approval. *See id.*

### 2. Arm's-Length Negotiations/Risk of Fraud or Collusion

The procedural posture of the litigation indicates that the parties' settlement is the result of "a truly adversarial bargaining" process. *Newberg & Rubenstein on Class Actions* § 13:50 (6th ed. 2024). This case has been pending for over a decade, with significant adversarial motion practice and discovery during that time. (*See* D.N. 112-2, PageID.2457–64 ¶¶ 1–19; *see also* D.N. 56; D.N. 59; D.N. 63; D.N. 65; D.N. 74) It has been to the Sixth Circuit and back (D.N. 92, PageID.2382), and the fact that the settlement was reached following mediation strongly suggests an absence of collusion. *Thomsen v. Morley Cos., Inc.*, 639 F. Supp. 3d 758, 769 (E.D. Mich. 2022); *Newberg & Rubenstein on Class Actions* § 13:50 (noting that "there appears to be no better evidence of" a truly adversarial process "than the presence of a neutral third party mediator"). Thus, these factors also weigh in favor of approval.

### 3. Adequacy of Relief

#### a. Costs, Risks, and Delay of Trial and Appeal/Complexity, Expense, and Likely Duration of the Litigation/Likelihood of Success on the Merits

The parties have already invested significant time and money in this litigation, at significant risk. (*See, e.g.*, D.N. 120, PageID.2735–44 (Winebrake declaration); *id.*, PageID.2746

4

(Heimbach declaration); *id.*, PageID.2748 (Salasky declaration)) Proceeding to trial would entail further risk and expense, with the outcome uncertain—regardless of the strength of their claims, Plaintiffs could fail at the certification stage, while Defendants could face even greater exposure if the case were to proceed. This factor therefore favors approval.

### b. Method of Distribution

This factor favors approval when "class members" are not required to "submit claim forms or other documents to participate in the recovery." *See McKnight v. Erico Int'l Corp.*, 655 F. Supp. 3d 645, 663 (N. D. Ohio 2023). The distribution process here imposes no such requirement; instead, class members will receive payment unless they opt out. (D.N. 116-1, PageID.2575) Moreover, on April 16, 2024, the claims administrator "mailed [the notices of settlement] via First Class Mail [to] twenty-one thousand four hundred seventeen (21,417) Class Members," and only "two hundred forty-five (245) . . . were undeliverable." (D.N. 116-2, PageID.2581 ¶ 8–9) Ultimately, nothing about the method of distribution in this case appears designed to prevent class members from receiving payment.

### c. Attorney Fees

Here, counsel seek $1,451,893 in attorney fees and costs, "which equals approximately 33% of the total $4,399,678 settlement fund." (*See* D.N. 112-4, PageID.2508 ¶ 10) The Sixth Circuit recognizes two methods for calculating attorney fees: the lodestar method and the percentage-of-the-fund method. *Gascho v. Glob. Fitness Holdings, LLC*, 822 F.3d 269, 279 (6th Cir. 2016). The Court "ha[s] the discretion to select the particular method of calculation, but must articulate the 'reasons for "adopting a particular methodology and the factors considered in arriving at the fee."'" *Id.* at 280 (quoting *Moulton v. U.S. Steel Corp.*, 581 F.3d 344, 352 (6th Cir. 2009)). The percentage method is generally preferred in common-fund cases. *Lonardo v.*

5

*Travelers Indem. Co.*, 706 F. Supp. 2d 766, 789 (N.D. Ohio 2010) (citing *Rawlings v. Prudential-Bache Props., Inc.*, 9 F.3d 513, 516 (6th Cir. 1993)).

The percentage-of-the-fund method is straightforward and consistent with the fee arrangement between Plaintiffs and class counsel (*see* D.N. 116-1, PageID.2551 ¶ 13; D.N. 117-1, PageID.2643 ¶ 8); it also "more accurately reflects the results achieved." *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516). Moreover, the concern that "a percentage award may . . . provide incentives to attorneys to settle for too low a recovery because an early settlement provides them with a larger fee in terms of the time invested" is not present here given that counsel have invested over a decade in this litigation. *Id.* (quoting *Rawlings*, 9 F.3d at 516). The Court will therefore apply the percentage-of-the-fund method here.

The Sixth Circuit has identified six factors relevant to the attorney-fee inquiry under either method:

> (1) the value of the benefit rendered to the plaintiff class; (2) the value of the services on an hourly basis; (3) whether the services were undertaken on a contingent fee basis; (4) society's stake in rewarding attorneys who produce such benefits in order to maintain an incentive to others; (5) the complexity of the litigation; and (6) the professional skill and standing of counsel involved on both sides.

*Id.* (quoting *Moulton*, 581 F.3d at 352). These factors support approval of class counsel's requested fee. First, the value of the benefit to class members is substantial: class members who do not opt out will receive more than $100 on average. (*See* D.N. 116-1, PageID.2569 ¶ 4; *see also* D.N. 117, PageID.2624 n.7) Class counsel have extensive experience in this type of litigation (D.N. 112-2, PageID.2463–64 ¶¶ 16–19) and provided their services on a contingent basis. (D.N. 117-1, PageID.2643 ¶ 8) The case is complex, and society has a strong interest in rewarding attorneys who take such cases and "achieve a result that the individual class members probably could not obtain on their own," particularly in the wage-and-hour context. *Est. of McConnell v.*

6

*EUBA Corp.*, No. 3:18-cv-355, 2021 WL 1966062, at *6 (S.D. Ohio May 17, 2021) (citation omitted).

The value of class counsel's services on an hourly basis likewise favors approval of the requested fee award. Class counsel submitted documentation showing a lodestar amount of $1,089,426. (D.N. 116-2, PageID.2610 ¶ 6) The resulting "multiplier" is 1.3, which is well within the reasonable range, particularly given the significant risk and expense undertaken and "public benefit achieved" by class counsel. *Gascho*, 822 F.3d at 279 (quoting *Rawlings*, 9 F.3d at 516); *see also McConnell*, 2021 WL 1966062, at *7 (citations omitted) (finding multiplier of 2.9 to be "within the acceptable range" and noting that a multiplier is particularly necessary "in wage cases . . . , which are inherently complex, difficult, and expensive to litigate").

Finally, the percentage sought is not unreasonable. The proposed fee award in this case represents one third of the total settlement amount. (*See* D.N. 116-2, PageID.2586 ¶ 10) Fee awards of thirty-three percent are frequently approved in complex wage-and-hour cases. *See, e.g.*, *Jones v. H&J Rests., Inc.*, No. 5:19-CV-105-TBR, 2020 WL 6877577, at *5 (W.D. Ky. Nov. 23, 2020) (citations omitted). In light of circuit precedent, the proposed fee award is reasonable.

### d. Other Agreements

The settlement agreement states that it "contains the entire agreement between the Parties relating to the settlement and transaction contemplated hereby, and all prior or contemporaneous agreements, understandings, representations and statements, whether oral or written and whether by a Party or such Party's legal counsel, are merged herein." (D.N. 116-1, PageID.2559 ¶ 32) Thus, this factor favors final approval.

### 4. Equitable Treatment of Class Members/Preferential Treatment of Named Plaintiffs

The settlement agreement provides for $15,000 "service awards" to the named plaintiffs, Neal Heimbach and Karen Salasky. (D.N. 116-4, PageID.2614 ¶ 4) An incentive payment generally "does not raise a red flag" in the settlement-approval inquiry "because the class representative and class member are not similarly situated in regard to . . . the incentive payment: the class representative did extra work and took extra risk to earn that." *Newberg & Rubenstein on Class Actions* § 13:56. Requests for incentive awards are nevertheless "scrutinized carefully" in light of the concern that such payments "may lead named plaintiffs to expect a bounty for bringing suit or to compromise the interest of the class for personal gain." *Hadix v. Johnson*, 322 F.3d 895, 897 (6th Cir. 2003) (citing *Newberg on Class Actions* § 11.38 (3d ed. 1992)).

As noted in the Court's April 2, 2024 Order, the service awards requested in this case "exceed the threshold suggested by Sixth Circuit caselaw." (D.N. 115, PageID.2531 (citing *Strano v. Kiplinger Washington Eds., Inc.*, 646 F. Supp. 3d 909, 913 (E.D. Mich. 2022) (collecting cases))) But "considerable time" spent by a plaintiff in protecting the class's interests can justify a heightened service award if such efforts are "supported by . . . [documentation that] quantif[ies] the plaintiff's] invested time." *Moeller v. Week Pub'ns, Inc.*, 646 F. Supp. 3d 923, 927 (E.D. Mich. 2022); *see Strano*, 646 F. Supp. 3d at 914.

Here, plaintiffs provided timesheets and documentation of their time spent on the litigation, which included assisting class counsel, participating in mediation, reviewing the proposed settlement, and attending the final fairness hearing. (D.N. 120, PageID.2735–44 (Winebrake declaration and time sheets); *id.*, PageID.2746 (Heimbach declaration); *id.*, PageID.2748 (Salasky declaration)) Plaintiffs also dealt with publicity surrounding the Pennsylvania courts' and the Supreme Court's consideration of the case. (D.N. 117, PageID.2640 n.1 (citing Queen Muse,

*Worker sues Amazon over lengthy security searches without pay*, NBC News (Oct. 15, 2013), https://www.nbcnews.com/news/us-news/worker-sues-amazon-over-lengthy-security-searches-without-pay-flna8c11394481); *id.* n.2 (citing Judy Greenwald, Penn. employers obligated to pay for workers' screening time, Bus. Ins. (July 22, 2021), https://www.businessinsurance.com/article/20210722/NEWS06/912343421/Pennsylvaniaemployers-obligated-to-pay-for-workers%E2%80%99-screening-time-In-re-Amazo)).

Moreover, while the incentive amounts are significant, they are not excessive per se, *see, e.g.*, *Ganci v. MBF Inspection Servs., Inc.*, No. 2:15-CV-2959, 2019 WL 6485159, at *8 (S.D. Ohio Dec. 3, 2019) (collecting cases), and the relief to unnamed class members will not be "perfunctory," *Pelzer*, 655 F. App'x at 359 (citation omitted), but based on the number of shifts they worked during the relevant time period. The payments are therefore both reasonable and supported by documentation, warranting approval.

5. **Public Interest**

"[T]here is a strong public interest in encouraging settlement of complex litigation and class action suits" generally "because they are 'notoriously difficult and unpredictable' and settlement conserves judicial resources." *Doe*, 925 F.3d at 899 (quoting *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 530 (E.D. Mich. 2003)). This final factor therefore also supports approval.

B. **Certification for Settlement Purposes**

The Court previously granted conditional certification for settlement purposes. (D.N. 115, PageID.2532–36) There is no indication that any of the factors supporting certification have changed since that ruling; thus, certification for settlement purposes is appropriate. *See* Fed. R. Civ. P. 23(a), (b)(3).

9

C.     **Notice to Class Members**

Rule 23 requires that the Court "direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Court previously approved the form and contents of the notice and directed that it be sent to class members via first-class mail. (D.N. 115, PageID.2536) The notice process appears to have been successful, as nearly ninety-nine percent of class members received notice. (D.N. 116-2, PageID.2580–81 (explaining that of the 21,417 notices mailed, only 245 were ultimately deemed undeliverable)) The Court therefore finds the notice procedure fair, reasonable, and adequate.

D.     **Payment to Claims Administrator**

Based on the affidavit submitted by Simpluris representative Markus Bulthuis, the claims administrator appears to have performed its duties in accordance with the settlement agreement and the Court's prior order. (D.N. 116-2, PageID.2579–82; *see* D.N. 115, PageID.2537) The payment to Simpluris will therefore also be approved.

### III.

In sum, the Court finds the parties' settlement to be fair, reasonable, and adequate. Accordingly, and the Court being otherwise sufficiently advised, it is hereby

**ORDERED** as follows:

(1)   Plaintiff's unopposed motion for final approval (D.N. 116) is **GRANTED**.

(2)   The Court adopts the defined terms in the Settlement Agreement.

(3)   The following class is certified for settlement purposes only:

All current and former non-exempt employees of Defendants Amazon.com, Inc., Amazon.com.DEDC, LLC, Amazon.com DEDC, Inc., and/or Integrity Staffing Solutions Inc. who w[ere] credited with working forty (40) or more hours (exclusive of vacation, sick, or other leave time) during at least one week a

Amazon's Breinigsville, PA warehouse (a.k.a. "ABE2") during the time periods of 9/5/10 - 3/31/20 and/or 4/5/21 - 11/30/22.

(4) The Court confirms the appointment of Neal Heimbach and Karen Salasky as Class Representatives and the Service Award payments in the amounts set forth in the Settlement Agreement: (1) $15,000 to Plaintiff Neal Heimbach and (2) $15,000 to Plaintiff Karen Salasky.

(5) The Court confirms the appointment of Winebrake & Santillo, LLC as Class Counsel for the settlement class and approves their requests for attorney fees and litigation costs totaling $1,451,893.

(6) The Court finds that as of the date of this Order, each and every class member who did not submit a timely and valid request for exclusion has waived and released claims as set forth in the Settlement Agreement and Notice of Settlement.

(7) The Court finds that the settlement administrator Simpluris, Inc. is entitled to $150,000 for settlement administration.

(8) The Court directs the parties to effectuate the settlement terms as set forth in the Settlement Agreement and the settlement administrator to calculate and pay the claims of the class members in accordance with the terms set forth in the Settlement Agreement.

(9) This matter is now **DISMISSED** with prejudice, **STRICKEN** from the Court's docket, and **CLOSED**. The Court retains jurisdiction to enforce the terms of the settlement, including the payment of the settlement fund.

July 10, 2024

David J. Hale, Judge
United States District Court